UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| REBECCA ROMAN AND OLEG BONDAREV, <br> Plaintiffs, <br><br> v. <br><br><br> DENIS RIORDAN, USCIS, DISTRICT DIRECTOR, <br> LEON RODRIGUEZ, USCIS DIRECTOR, and <br> JEH JOHNSON, SECRETARY, DEPARTMENT <br> HEALTH AND HUMAN SERVICES, <br> Defendants. | CIVIL ACTION <br> NO. 15-40061-TSH |

## MEMORANDUM OF DECISION AND ORDER FOR JUDGMENT
**September 19, 2016**

**HILLMAN, D.J.**

### Background

Plaintiffs, Rebecca Roman ("Roman") and Oleg Bondarev ("Bondarev") seek review under the Administrative Procedures Act, 5 U.S.C. §701, *et seq*. ("APA"), of the United States Citizenship and Immigration Service ("USCIS") denial of their Form I-130, Petition for Alien Relative ("I-130 petition") and the Board of Immigration Appeals' ("BIA") affirmance of USCIS's decision. The parties have filed cross-motions for summary judgment. For the reasons set forth below, Plaintiffs' motion for summary judgment is *denied* and Defendants' motion for summary judgment is *granted*.

**Standard of Review**

*Summary Judgment under the APA*

Generally, summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). However, "[t]his rubric has a special twist in the administrative law context." *Associated Fisheries of Maine, Inc. v. Daley*, 127 F.3d 104, 109 (1st Cir. 1997). "Under the APA, a reviewing court may only set aside an agency's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," such as if it is 'unsupported by substantial evidence.'" *Atieh v. Riordan,* 797 F.3d 135, 138 (1st Cir. 2015) ("*Atieh II*"); 5 U.S.C. §§706(2)(A),(E)). "In making this determination, an agency's factual findings are entitled to deference regardless of which party has moved for summary judgment. Thus, the usual rules that describe how the court must construe the summary judgment record do not apply." *Sig Sauer, Inc. v. Jones*, 133 F. Supp. 3d 364, 369 (D.N.H. 2015).

Review under the arbitrary and capricious standard is narrow, and this Court "may not substitute its judgment for that of the agency, even if it disagrees with the agency's conclusions." *River St. Donuts, LLC v. Napolitano*, 558 F.3d 111, 114 (1st Cir. 2009). "Consequently, judicial review of agency decisions is highly deferential. If the agency's decision is supported by any rational view of the record, a reviewing court must uphold it." *Atieh II*, 797 F.3d at 138 (quotation marks and citations omitted).

**Facts**

Bondarev is a native of Russia who entered the United States on October 1, 2002, as a B-1 visitor. *See Certified Administrative Record* (Docket No. 21)("*AR*"), at 191. On June 29, 2005, he married his first wife, Victoria Burns ("Burns"), a United States Citizen, in Chicago,

Illinois. *Id..* at 255. On December 13, 2005, Burns filed an I-130 petition on Bondarev's behalf. On June 21, 2006, Burns submitted a signed "Withdrawing Petition For Alien Relative" ("withdrawal request") pursuant to which she withdrew that I-130 petition. *Id.*, at 250. In the withdrawal request, she alleged that: (1) Bondarev approached her and proposed marriage so that he could obtain a green card; (2) Bondarev offered her "55 grams of drugs" in exchange for marriage; (3) she and Bondarev never lived together, and; (4) she had a "real" boyfriend. *Id.* Burns indicates in the withdrawal request that she gave her statement "freely and voluntarily," and "without threat or coercion by an Immigration Officer." *Id.* Two USCIS officers also signed their names on the withdrawal request as witnesses to Burns' statement. *Id.* On July 28, 2006, USCIS sent a letter to Burns confirming her withdrawal of the I-130 petition on Bondarev's behalf. *Id.,* at 249. Burns did not contest the withdrawal of the petition at the time this letter was issued, nor did she subsequently file another I-130 petition for Bondarev. Bondarev and Burns divorced on August 29, 2011. *Id.,* at 191.

On April 6, 2012, Bondarev married Roman, a United States Citizen, in Worcester, Massachusetts. Roman filed an I-130 petition on Bondarev's behalf on July 24, 2012. On December 3, 2012, Roman and Bondarev were interviewed at the USCIS Field Office in Lawrence, Massachusetts in connection with their I-130 petition. *Id.,* at 24. During the interview, Plaintiffs gave discrepant answers to questions concerning: (1) when and how they met; (2) when Bondarev moved to Massachusetts; (3) the physical appearance of their shared home; (4) their activities on the morning of the interview, and; (5) details about Roman's children, including when and how her youngest child (who purportedly lives in the marital residence) goes to school, and what sport he plays after school. *Id.,* at 13. In addition, the documentary evidence provided by Plaintiffs contradicted statements made during their

interview as to where they lived at various times. *Id.* In light of these inconsistencies, USCIS issued a Notice of Intent to Deny ("NOID") the I-130 petition, explaining that "the testimony under oath, as well as the evidence submitted, failed to establish the claimed spousal relationship for immigration purposes." *Id.,* at 24. The NOID allowed Roman to submit evidence to rebut the derogatory information identified by USCIS. *Id.*

Roman submitted a timely response to the first NOID. *Id.,* at 138. Her response included an affidavit explaining the couple's conflicting answers at the interview, as well as additional documentary evidence. *Id.,* at 111. However, USCIS found that Plaintiffs had not satisfactorily explained some of the most significant inconsistencies in the record, and on May 22, 2014, issued a second NOID. *Id.,* at 17. The second NOID—citing Burns' withdrawal request—also indicated that USCIS intended to find that approval of any petition filed on Bondarev's behalf was prohibited by 8 U.S.C. §1154(c) because his prior marriage to Burns was fraudulent. *Id.,* at 23. The second NOID also allowed Roman to submit evidence to rebut USCIS's allegations. *Id.*

Roman submitted a timely response to the second NOID. *Id.,* at 92. Her response included a recantation statement from Burns, dated June 18, 2014, in which she claimed that her marriage to Bondarev was "real" and "not based on drugs or money." *Id.,* at 97. Burns further stated in her recantation that, "[she] never said that [Bondarev] gave her drugs," and that, "55 grams of cocaine would keep a herd of elephants drugged for a year." *Id.* Roman's response to the second NOID also included: (1) an affidavit from Bondarev maintaining that his marriage to Burns was bona fide; (2) a letter from one of Bondarev's friends to the same effect; (3) a statement from Bondarev's former landlord in Chicago, claiming that Bondarev and Burns lived together from May 2005 to "2006 or 2007"; (4) bank statements from Bondarev and Burns' joint bank account, and; (5) a letter from Bondarev's employer, dated June 16, 2014, indicating that

during the previous four years Bondarev had submitted to and passed various random drug tests in the course of his employment. *See Id.,* at 92-109

On July 28, 2014, USCIS denied Roman's I-130 petition, finding that (1) Roman and Bondarev had not sufficiently proven that their marriage was bona fide, and (2) even if they had proven their marriage was bona fide, 8 U.S.C. §1154(c) prohibited approval of any I-130 petition filed on Bondarev's behalf due to his prior fraudulent marriage to Burns. *Id.,* at 77. USCIS concluded that the Roman's response to the second NOID did not overcome the "substantial and probative evidence" of marriage fraud in the record (*i.e.* Burns' withdrawal request). *Id.* According to USCIS, Burns' specific reference to "cocaine" in her recantation statement—where in her withdrawal request she referred only to "drugs"—reinforced the reliability of the withdrawal because it provided additional information about the alleged fraudulent scheme. *Id.,* at 86-87. USCIS gave less weight to the letter from Bondarev's former landlord because it conflicted with other documentation in the record, including a joint bank account statement from 2010 listing Bondarev and Burns as still residing at the address he claimed Burns left in "2006 or 2007." *Id.* USCIS also found that the affidavit from Bondarev's friend, which indicated that "[Bondarev] told [the friend] he caught [Burns] in bed with another guy," was "contrary to proving a bona fide marriage," and additionally found that the letter from Bondarev's employer was irrelevant, as there was never a question whether Bondarev used drugs.

Plaintiffs appealed USCIS's denial of their I-130 petition to the BIA, and forwarded along with their appeal the results of a polygraph test taken by Bondarev indicating that there was "no deception" regarding his denial that he had given drugs to Burns in exchange for marriage. On February 20, 2015, after conducting a de novo review of the record, the BIA dismissed Plaintiffs' appeal and affirmed USCIS's decision to deny the I-130 petition. The BIA

indicated that it was "unpersuaded that [Bondarev's] self-serving statements regarding the marriage (in his affidavit) are sufficient to overcome the adverse information presented therein," and found that the affidavit from Bondarev's friend insufficient because it provided only general statements regarding Bondarev and Burns' relationship.  The BIA dismissed Plaintiffs' argument that Burns denied signing ever signing the withdrawal request, stating that it was "not persuaded that [Burns] can reliably recollect whether she signed the statement in June 21, 2006, in light of her acknowledged substance abuse at that time," and agreed with USCIS that the veracity of Burns' recantation was undermined due to her specific reference to cocaine.  The BIA further concluded that Bondarev's polygraph test—submitted for the first time on appeal—did not address the issue of whether Bondarev had married Burns for immigration benefits, or whether that marriage was bona fide, and thus was insufficient to meet Plaintiffs' burden.

      The BIA also upheld USCIS's determination that Bondarev and Roman had not met their burden of proving that their marriage was bona fide. The BIA was unconvinced by Plaintiffs' explanations for the discrepancies in their testimony, including the color of the exterior of their house and the after-school activities of Roman's son, whom they claimed lived with them.  The BIA found "the explanations [for the inconsistencies] unavailing as they do not lend credence to the ultimate conclusion that the [Bondarev and Roman] are living a life together." *Id.*  The BIA further found that the remaining documentation provided by Plaintiffs was not sufficient to overcome these inconsistencies.  *Id.*  The BIA noted that the lease agreement provided by the couple did not contain Roman's signature, and the e-mail offered to establish the continuation of the lease did not contain an actual or electronic signature, and BIA found that the remaining documents were "insufficient to establish cohabitation or to otherwise overcome the concerns

raised in the NOID regarding the validity of the marriage." For these reasons, the BIA upheld the I-130 petition denial and dismissed the appeal.

## Discussion

### *Statutory Bar to Petition Approval under 8 U.S.C. 1154(c)*

"Under the [Immigration and Nationality Act], an alien may achieve lawful permanent residence status if he qualifies as an immediate relative' of a U.S. citizen." *Atieh*, 797 F.3d 138 (citing 8 U.S.C. §1151(b)(2)(A)(i)). Spouses of U.S. citizens are considered "immediate relatives" under the statute. 8 U.S.C. §1151(b)(2)(A)(i). Before an alien spouse may gain lawful permanent resident status, a citizen spouse must first file an I-130 petition. §1154(a)(1)(A)(ii). However, if a USCIS district director determines "either that the alien entered into a marriage 'for the purpose of evading the immigration laws' or that the alien 'attempted or conspired' to do so, the alien will be rendered ineligible for lawful permanent resident status." *Atieh* 797 F.3d at 138 (quoting § 1154(c)); *see also Matter of Tawfik*, 20 I. & N. Dec. 166, 168 (BIA 1990). "This determination also applies to any prior marriage found to have been entered into for the purpose of evading immigration laws." *Ali v. United States*, 15-CV-201-AJ, 2016 WL 3190190 (D.N.H. June 7, 2016)(citation to quoted case, internal quotation marks, and alterations omitted).

It is initially the "[g]overnment's burden of establishing substantial and probative evidence that the prior marriage was a sham." *Matter of Kahy*, 19 I. & N. Dec. 803, 806 (BIA 1988)); *see also* 8 C.F.R. § 204.2. "Substantial evidence 'is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev.*, 620 F.3d 62, 66 (1st Cir. 2010) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951)).

If the government meets this burden, it must issue a NOID to the petitioner and afford the petitioner "an opportunity to rebut the information and present information ... before the decision is rendered" by the government. 8 C.F.R. §§ 103.2(b)(8)(iv), (b)(16)(i). At this point, "the burden shifts to the petitioner to rebut [the] USCIS's finding of fraud and establish that a prior marriage was not 'entered into for the purpose of evading immigration laws.'" *Zemeka v. Holder*, 989 F. Supp. 2d 122, 130 (D.D.C. 2013) (quoting *Kahy*, 19 I. & N. Dec. at 805).

On review by the district court, "[a]n agency's finding regarding the bona fides of a marriage is normally regarded as a finding of fact ... [and] such a finding is reviewed under the substantial evidence standard." *Atieh*, 797 F.3d at 138. Under the substantial evidence standard, the court "cannot contravene the agency's factfinding unless a reasonable adjudicator would be compelled to reach a contrary conclusion." *Akwasi Agyei v. Holder*, 729 F.3d 6, 13 (1st Cir. 2013). "Within this rubric, a credibility determination is a finding of fact; and [the court] will uphold such a finding so long as the agency 'articulate[s] specific and cogent reasons' to support its view.'" *Atieh*, 797 F.3d at 138 (quoting *Ahmed v. Holder*, 765 F.3d 96, 101 (1st Cir. 2014)). Where, as here, the BIA's decision adopts and affirms the USCIS's denial of the petition but also elaborates on some of the bases of the USCIS's decision, the court reviews both decisions in tandem. *See Akwasi Agyei,* 729 F.3d at 13*; Zemeka,* 989 F. Supp. 2d at 128.

### *Whether the Record Supports a Finding of Marriage Fraud In Regards To Bondarev's First Marriage*

Plaintiffs assert that the record does not contain substantial and probative evidence of marriage fraud. They take issue with the BIA's reliance on Burns' withdrawal request, claiming that it did not constitute substantial and probative evidence of fraud given that: (1) Burns denies signing it, and even if she did sign it, the record calls into question whether it was signed knowingly and voluntarily; (2) the withdrawal request was typed by a USCIS officer instead of

Burns herself; (3) the withdrawal request is unsworn, and; (4) there is no other evidence in the record to corroborate the statements made in the withdrawal request. Plaintiffs argue that contrary to the finding of the USCIS and BIA, the record undermines the credibility of the withdrawal request while giving credence to Burns' recantation and thereby, supports a finding the marriage was bona fide.

First, I find that the BIA and USCIS did not abuse their discretion when they found substantial and probative evidence in the record to support a finding that Bondarev's marriage to Burns was fraudulent. Burns' withdrawal statement, which was typed on agency letterhead and was prepared and signed in the presence of two USCIS officers, was the product of agency action and therefore, is entitled to a presumption of regularity. "[I]n the absence of clear evidence to the contrary, it is presumed that government agencies have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 (1996) (quoting *United States v. Chemical Foundation*, Inc., 272 U.S. 1, 14-15, 47 S.Ct. 1 (1926)). Consequently, "records made by public officials in the ordinary course of their duties . . . evidence strong indicia of reliability." *Felzcerek v. INS*, 75 F.3d 112, 116 (2$^d$ Cir. 1996). That the statement was unsworn is not enough to render it unsubstantial. *See Ogbolumani v. Napolitano*, 557 F.3d 729, 734 (7th Cir. 2009) ("While sworn statements would have bolstered USCIS's case, they are not. . . required").

As to Plaintiffs' argument that the BIA and USCIS failed to give sufficient weight to Burns' sworn affidavit recanting her withdrawal request, it is clear that both the BIA and USCIS considered Burns' recantation, but did not find it credible. More specifically, the BIA agreed with the USCIS that additional details included in the recantation, which were not part of the withdrawal request, such as the nature of the drug Bondarev provided her in exchange for

entering into the marriage[1], undermined the veracity of the recantation. As to Burns' denial that she signed the withdrawal request, the USCIS was not persuaded that at the time submitted the recantation she could "reliably recollect" whether she had signed the withdrawal statement on June 21, 2006, given her admitted drug use at that time. The BIA agreed with this finding. Contrary to Plaintiffs' contentions, this does not amount to a concession that the withdrawal statement was not signed knowingly and voluntarily: a reasonable mind could conclude that Burns' memory is affected by her abuse of drugs and that her withdrawal request is more credible than her recantation. Moreover, the BIA and USCIS did not rely solely on the withdrawal request— as set forth in great detail in the findings of fact section, *supra*, there was other evidence in the record which amply supports a finding that Bondarev's marriage to Burns was fraudulent. Plaintiffs also point out that there was conflicting evidence which tends to establish that the marriage was bona fide, including Bondarev's statements, an affidavit from a friend of his, the statement of a former landlord, the statement of Bondarev's employer, and Bondarev's polygraph (which was only submitted to the BIA). However, both the BIA and USCIS explained in detail why they found that evidence to be either incredible, irrelevant, unreliable, or, as in the case of the friend's letter, contradictory to a finding that the marriage was bona fide. On the record before me, Plaintiffs' attempt to rebut the presumption that Bondarev's marriage to Burns was fraudulent is unavailing. Accordingly, I find that the determination by the BIA and USCIS that Bondarev's marriage to Burns was fraudulent is supported by the substantial evidence in the record. Because Bondarev's first marriage was entered into fraudulently, Roman's I-130 petition on behalf of Bondarev is barred.

---

[1] In her withdrawal statement, Burns indicated that Bondarev had provided her 55 grams of a controlled substance to marry him. However, in the recantation, Burns denies that Bondarev provide her with "cocaine."

*Whether the Record Supports a Finding of Marriage Fraud In Regards To Plaintiffs' Marriage*[2]

The determination by the BIA and USCIS that the Plaintiffs did not enter into a bona fide marriage was not an abuse of discretion. The evidence supporting a bona fide marriage is highly suspect and much of it appears to have been manufactured after Roman received the first NOID. The USCIS in making its decision, and the BIA in affirming that decision, relied heavily on inconsistent factual statements made by the Plaintiffs to the USCIS regarding: where they met, how they met, when Bondarev moved to Massachusetts, their activities on the morning of the interview with the USCIS, details about the lives of Roman's children (including where they lived and went to school), the color of the exterior of their residence and other matters as to which married spouses living together would be expected to be aware. Moreover, both the USCIS and BIA found that Roman's responses to the two NOIDs issued to her by the USCIS did not adequately explain the discrepancies. These inconsistencies as well as *numerous* others contained in the record relate to material matters and, as found by the BIA, "undermine [Roman's] claim that she is living with [Bondarev] in a bona fide marriage'" *AR,*, at 13. For the reasons set forth above, on the record before me, I find that the determination by the BIA and USCIS that the Plaintiffs' marriage is fraudulent is substantially supported by the record.

## Conclusion

It is hereby Ordered that:

(1) Plaintiff's [sic] Motion for Summary Judgment (Docket No. 30) is ***denied***; and

---

[2] Although the BIA and USCIS found that Roman was statutorily barred from brining a I-130 petition on Bondarev's behalf, they went on to consider the issue of whether the Plaintiffs' marriage was also fraudulent. For the sake of completeness, I will do the same.

(2) Defendants' Motion for Summary Judgment (Docket No. 33) is **_granted_**;

Judgment shall enter for the Defendants.

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**